991 P.2d 258

**STATE of Arizona, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF YAVAPAI, The Honorable Richard Anderson, a judge thereof, Respondent Judge,**

**Arnold A. Pawlowicz, Joan Ann Anderson Fierst, Kristin C. Cryer, Casey Todd Lattimore and Jack Warren Robbins, Real Parties in Interest.**

No. 1 CA–SA 98–0266.

Court of Appeals of Arizona, Division 1, Department B.

April 6, 1999.

Review Denied Jan. 4, 2000.

---

Charles R. Hastings, Yavapai County Attorney By: Steven A. Young, Deputy County Attorney, Camp Verde, and Michael G. Goimarac, Sedona City Attorney, Sedona, Attorneys for Petitioner.

Aspey, Watkins & Diesel, P.L.L.C. By: Kaign N. Christy, Sedona, Attorneys for Real Parties in Interest Pawlowicz, Fierst, Cryer, and Lattimore.

Daniel F. Furlong and James C. Lerch, Prescott, Attorneys for Real Party in Interest Robbins.

## OPINION

GARBARINO, Judge.

¶1 The State seeks special action relief from the trial court's ruling suppressing evidence of breath tests from an Intoxilyzer 5000 that had · been supplemented with a keyboard and vapor recirculation attachment. The defendants argue that the tests are inadmissible on any basis because the officer conducting the tests was not fully trained on an Intoxilyzer supplemented with the additional equipment. We accepted jurisdiction and granted the State relief, with this opinion to follow.

## FACTUAL AND PROCEDURAL HISTORY

¶2   Five defendants were charged with DUI. We will refer to them collectively as "the defendants." Although consolidated in the superior court, some of the charges had been filed in the Sedona Magistrate Court and some had been filed in the Verde Valley Justice Court.

¶3   In each case, the State attempted to introduce the test results from an Intoxilyzer 5000 supplemented with a keyboard and vapor recirculation attachment. The supplemental equipment enables the Intoxilyzer 5000 to be integrated into a statewide "Alcohol Data Acquisition and Management System." We will refer to the new device as the Intoxilyzer 5000 ADAMS.

¶4   Because there was an issue of law common to all of the Sedona cases, they were consolidated in the Sedona Magistrate Court. The Sedona magistrate denied the defendants' motions to suppress the breath test results and the cases were set for trial. The Sedona defendants filed a complaint for special action and an application for an interlocutory stay with the Yavapai County Superior Court. The superior court granted the stay. The State filed a motion to dismiss the petition for special action and the Sedona defendants filed a response, as well as a cross-motion for summary judgment.

¶5   Similarly, the Verde Valley defendants' cases were consolidated. However, the Verde Valley Justice Court granted the Verde Valley defendants'· motions to suppress the breath test results on the basis that the State could not meet the statutory requirements for admissibility under Arizona Revised Statutes Annotated (A.R.S.) section 28–1323 (1998).[1] The State filed a petition for special action with the Yavapai County Superior Court seeking review of the justice court's ruling.

¶6   The Verde Valley cases and the Sedona cases were consolidated at the request of the Sedona defendants for purposes of the special action filed in the superior court. The superior court accepted jurisdiction, reviewed the motions and arguments submitted in the trial courts, and issued an order that "the state may not introduce into evidence any of the Breathalyzer test results obtained in any of these cases." The State filed a petition for special action with this Court.

## JURISDICTION

¶7   Special action jurisdiction is appropriate in this instance because the State does not have an equally plain, speedy, and adequate remedy by appeal. *See* Rule 1(a), Rules of Procedure for Special Actions; *Purcell v. Superior Ct.,* 172 Ariz. 166, 169, 835 P.2d 498, 501 (App.1992). Arizona Revised Statutes Annotated section 22–375(A) (1990) does not allow the State to appeal "a final judgment of the superior court in an action appealed from a justice of the peace or police court ... [unless] the action involves the validity of a tax, impost, assessment, toll, municipal fine or statute." Special action jurisdiction is proper in this case because this is an issue of first impression and a matter of statewide importance. *State v. Superior Ct.,* 187 Ariz. 411, 414, 930 P.2d 488, 491 (App. 1996).

## ISSUE

Was it an abuse of discretion for the court to suppress "any of the Breathalyzer test results obtained" through the use of an Intoxilyzer 5000 ADAMS because the operator was not certified to use it?

## DISCUSSION

¶8   The superior court held that the State could not establish an evidentiary foundation for the admission of the breath test results pursuant to either A.R.S. section 28–1323(A) or the Arizona Rules of Evidence. The ruling of the Verde Valley Justice Court suppressing the results of the breath tests was based solely on the court's belief that the operators did not meet the requirements of A.R.S. section 28–1323(A). There was no mention in the ruling of the rules of evidence.

¶9   Although the superior court indicated that it was adopting the justice court's order and opinion, the superior court extended the

1.   Formerly A.R.S. section 28–695.

ruling and held that the test results were inadmissible on *any* basis:

> IN CV998–0028 Pawlowicz et al. vs. Sedona Magistrate Court, IT IS ORDERED: The Motion to Dismiss filed by Sedona City Attorney is DENIED; The Motion for Summary Judgment filed by plaintiffs is GRANTED.
>
> IN CV998–0166 State vs. Wyles, IT IS ORDERED: Plaintiff's Complaint is DISMISSED and the Order of the Verde Valley Justice of the Peace is AFFIRMED.
>
> . . . .
>
> Based upon the entire record in these consolidated cases, therefore, it is the conclusion of this Court that the State may not introduce into evidence *any of the Breathalyzer test results obtained in any of these cases.*

(Emphasis added.)

¶ 10 The superior court focused on the State's inability to satisfy the foundational prerequisites of A.R.S. section 28–1323(A) because the Department of Health and Safety (D.H.S.) had elected not to recertify the operators of the Intoxilyzer 5000 ADAMS and because the operator who conducted the test used an outdated checklist. No evidence before either the justice court or the superior court demonstrated that the State could not have established an evidentiary foundation for the admission of the breath test results under Rule 702 of the Arizona Rules of Evidence and *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923). *See State v. Velasco,* 165 Ariz. 480, 486, 799 P.2d 821, 827 (1990) ("Under *Frye,* evidence derived from application of a scientific principle or process is admissible if the principle or process has gained general acceptance in the particular field in which it belongs.").

■ ¶ 11 Assuming that the results of the breath tests were inadmissible because the State was unable to meet the statutory foundational prerequisites, and assuming that the State could lay the proper foundation, the results could still be admissible via the scientific method and the Rules of Evidence. At a minimum, the State should have been allowed to offer evidence to test its theory of admissibility. *See State ex rel.*

*Collins v. Seidel,* 142 Ariz. 587, 691 P.2d 678 (1984).

¶ 12 We next address whether the superior court properly exercised its discretion to suppress the test results based upon D.H.S.'s failure to require the operators to comply with the certification requirements of A.R.S. section 28–1323. To be admissible under this section, the test must, among other requirements, have been performed by an operator who was licensed by D.H.S. to operate the testing device. *See* A.R.S. § 28–1323(A)(1), (2). The defendants argue that the tests are inadmissible because D.H.S. has not required recertification on the Intoxilyzer 5000 ADAMS for those operators who already have been certified to use the Intoxilyzer 5000. The defendants contend that the Intoxilyzer 5000 ADAMS is listed as a separate testing device in the D.H.S. regulations, which require that D.H.S. provide updated training and new certification to the operators.

■ ¶ 13 The State's expert witnesses testified that the Intoxilyzer 5000 and the Intoxilyzer 5000 ADAMS are the same machine. According to one of the State's experts, the only difference between them is the addition of equipment to the Intoxilyzer 5000 ADAMS "to computerize, to standardize and to prepare a convenient, informative report." James L. Farrell, the person in charge of the regulation of D.H.S.'s Blood Alcohol Program, stated in his affidavit:

> 4. Because the ADAMS and Intoxilyzer 5000 sample breath and analyze alcohol in an identical manner, the ADAMS was considered an Intoxilyzer 5000 with only a different method of recording data and did not require separate approval. It was however included in the list of approved devices contained in the rule to avoid any question as to the keyboard's acceptance by DHS.
>
> 5. The ADAMS is an Intoxilyzer 5000 with a keyboard that is used to collect and record data. The Department did not consider record keeping a significant change to require additional formal training nor issue additional permits.

"[A]n [administrative] agency's interpretation of statutes or regulations which it implemented is generally afforded great weight." *Romo v. Kirschner,* 181 Ariz. 239, 240, 889 P.2d 32, 33 (App.1995). Accordingly, we defer to D.H.S.'s reasonable interpretation of its own rules. We are obliged to give rules and regulations a fair and sensible meaning, one consistent with both the language and the agency purpose. *See Samaritan Health Servs. v. Arizona Health Care Cost Containment Sys. Admin.,* 178 Ariz. 534, 537–38, 875 P.2d 193, 196–97 (App.1994). We find D.H.S.'s interpretation of its rules and regulations to be reasonable. The Intoxilyzer 5000 and the Intoxilyzer 5000 ADAMS have the same breath testing apparatus, the only difference being the addition of the data collection equipment. We hold that it was error to suppress breath test results based on D.H.S.'s failure to require operator recertification on the Intoxilyzer 5000 ADAMS for those operators who had previously been certified to operate the Intoxilyzer 5000.

¶ 14 Additionally, the Sedona defendants' contention that suppression was also warranted because the operator used the wrong operational checklist is without merit. The checklist about which the Sedona defendants complain appears to differ very little from the official D.H.S. checklist. In any event, the Sedona defendants have not identified the prejudice that they sustained from the use of the checklist.

¶ 15 We vacate the justice court's order suppressing the Verde Valley defendants' breath test results, as well as the superior court's order affirming the justice court's decision. We also vacate the superior court's order granting an interlocutory stay, and we remand the cases to the respective municipal and justice courts for trial.

CONCURRING: JAMES B. SULT, Presiding Judge, and MICHAEL D. RYAN, Judge.